VIRGINIA:

FILED

2014 OCT 20  P 4: 09

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

APEX CUSTOM HOMES, L.L.C., :
    29 N. KING ST :
    LEESBURG, VA 20176 :
    Plaintiff, :
v. : Civil Action No. 1:14CV1369 GBL/JFA
RONALD L. O'KELLEY :
&amp; :
LESLEY S. O'KELLEY :
    198 Commonwealth Ave, :
    Boston, MA 02116 :
    Defendants. :

## COMPLAINT

COMES NOW the Plaintiff, Apex Custom Homes, L.L.C., by counsel, and moves this Court for Judgment against the Defendants, Ronald L. O'Kelley and Lesley S. O'Kelley (collectively, the O'Kelleys), jointly and severally, and in support thereof states as follows:

### PARTIES AND JURISDICTION

1.    The Plaintiff, Apex Custom Homes, L.L.C. (hereafter, Apex), is a limited liability corporation licensed to do business in the Commonwealth of Virginia, with its principal headquarters located in Leesburg, Loudoun County, Virginia.

2.    To the best of the Plaintiff's knowledge, the O'Kelleys are residents of Boston, Massachusetts. They own a residence at 198 Commonwealth Ave, Boston,

Massachusetts 02116. However, the O'Kelleys also occasionally reside at 6001 Trophy Drive, Unit 1002, Naples, Florida 34110.

3. The amount in controversy exceeds $75,000.00.

4. This Court has diversity jurisdiction over this matter because Apex does not share a domicile with the O'Kelleys, and the amount in controversy in this case exceeds seventy-five thousand dollars ($75,000.00). See 28 U.S.C. § 1332(a) (2014).

5. This lawsuit arises out of a breach of contract and failure to pay by the O'Kelleys. The O'Kelleys entered a contract to have Apex build a custom home for them in Arlington, Virginia (Arlington County). The contract was formed and signed in Leesburg, Virginia (Loudoun County). Arlington County and Loudoun County are both within the Eastern District of Virginia.

6. The O'Kelleys, through their ownership of the property in Arlington, Virginia, as well as their signing the contract in Loudoun County, having the contract performed in Arlington County, and their on-site visits to the property form the minimum contacts necessary to this Court's exercise of personal jurisdiction over the defendants.

## FACTS

7. Paragraphs 1-6 are re-alleged, reaffirmed, and incorporated herein by reference.

8. In December, 2012, the O'Kelleys, with the help of their daughter Gillian, contacted Apex regarding the design and construction of a new home at 3155 20th Street North, Arlington, Virginia 22201 (hereafter, "the custom home").

9. Between December, 2012, and the end of June, 2013, the O'Kelleys, Gillian, and Apex worked on different design options for the custom home. Additionally, Derek Yates, the architect responsible for the design of the home, and Channing Blackwell, the engineer responsible for the site work and development of the design, discussed various options with the O'Kelleys before the final version was produced. Twenty-one draft versions of the custom home were produced prior to finalizing the design and signing the written contract.

10. On July 9, 2013, the O'Kelleys and Apex executed the "Construction Contract Apex Custom Homes, L.L.C., Building Agreement." This agreement was signed by the O'Kelleys in Leesburg, Virginia at the principal office of Apex.

11. The same day as the execution of the contract, Apex submitted architectural blueprints and the civil engineering site plan to Arlington County to obtain construction permits. In July, 2013, during the course of the approval process, Apex received notification from Arlington County that the plans, as submitted in Version 21, would not be approved because of siting issues with the main structure and detached garage.

12. Apex contacted the O'Kelleys by phone and email to address the issues raised by Arlington County. Apex, along with its architectural and engineering experts, had extensive discussions about, and communications with, the O'Kelleys about the proposed plan modification to which the O'Kelleys ultimately agreed. Thereafter, Apex submitted the modified plans to Arlington County, which were approved. Arlington County issued construction permits on October 24, 2013, and Apex began construction

the same day. The O'Kelleys were involved in, and aware of, all of the discussions pertaining to the resubmitted plans prior to construction beginning.

13. On January 31, 2014, the O'Kelleys came to the custom home for their first on-site visit. The O'Kelleys, Scott Prendergast (Apex's CEO and President), and Jason Schamberger, Apex's project manager for the custom home, completed a thorough walkthrough of everything that was finished at that time. The main structure was erected at the time of the visit, and the footers and walls[1] for the detached garage had been poured. The concrete slab for the detached garage foundation had also been prepared and was pending installation due to the weather.

14. Soon after the site visit, the O'Kelleys began to ask for changes to the existing structure. In February, 2014, the O'Kelleys hired a designer who had not been part of the original design process. With the aid of this designer, the O'Kelleys and Apex worked on redesigning the custom home, which lead to Version 30 of the plans.

15. Apex submitted a change order to the O'Kelleys in light of their new design ideas on April 28, 2014. The change order included an additional cost of $58,500.00 because the new work was beyond the scope of what was agreed to at the time of contract execution. The O'Kelleys never signed the submitted change order and never paid the money for the work to be done.

16. Apex performed its end of the contract through April 28, 2014, by building the custom home as previously agreed upon. By April 28, Apex had completed the demolition of the existing structure, concrete pouring for the home and detached

---

[1] Footers and walls are short concrete walls that help create the proper foundation for a particular structure.

4

garage, building up of the walls and footers for the detached garage, and framing of the main structure for the custom home.

17. By April 28, 2014, Apex had spent a total of $312,133.58 on various permits, materials, and other construction expenses incident to building the custom home. In addition, Apex is obligated to pay $82,184.00, which has not yet been paid, to vendors in connection with construction of the custom home. Thus, a total of $356,317.58 have been, or will be, paid out by Apex to its subcontractors and suppliers in order to reach the point of completion described above.

18. Apex was owed money at certain stages under the contract. An initial payment of $112,329.00 was due, and was received, upon signing the contract. Thereafter, a payment of $72,000.00 was due, and was received, for all demolition and receipt of the building permit. The next two payments had to be in the amount of $250,000.00 each ($500,000.00 total): the first payment was due upon completion of all concrete and related testing for the residence, garage, and property; the second payment was due upon completion of all framing and related inspections for the garage and residence. At the time of filing, Apex only received $184,329.00. Additionally, Apex expected to profit for the work performed and blocked off time that would have been otherwise available to undertake other projects to build the O'Kelley's custom home.

## COUNT I – BREACH OF CONTRACT

19. Paragraphs 1-18 are re-alleged, reaffirmed, and incorporated herein by reference.

20. The O'Kelleys were under an obligation to pay the sums required under the contract at the times they came due so long as the construction was built to plan. The contract states, "Contractor [Apex] has signified its willingness to construct and erect said residence and detached two-garage [sic] garage with apartment . . . **in accordance with the terms, agreements, and conditions**" of the project as further defined in the Agreement and incorporated documents. (emphasis added).

21. Per the contract, Apex was entitled to terminate the parties' agreement and seek compensation "[i]f the Owner [the O'Kelleys] fails to make payment [as required by the contract] for a period of 30 days through no fault of the Contractor [Apex]."

22. Upon learning that Version 21 was rejected by Arlington County, Apex, Yates, and Blackwell communicated with the O'Kelleys regarding the necessary changes and basis for the rejection of the original plans. The O'Kelleys received the site plan on July 23, 2013, showing the rotation of the main structure and where the detached garage would be moved. They also spoke with Apex, Yates, and Blackwell regarding the changes that needed to be made, and agreed to those changes so that construction could move forward.

23. By agreeing to modify the main structure's and detached garage's siting to gain Arlington County's approval, the O'Kelleys authorized a change in the plans. Apex built the home and detached garage exactly as agreed upon, and modified, by the O'Kelleys'.

6

24. Despite their agreement to modify the home to gain approval for a building permit, the O'Kelleys refused to make any payments once the concrete work was completed. In fact, Ronald O'Kelley emailed Apex as early as January 21 stating he was getting the money for the concrete draw ready. The O'Kelleys then hired a private inspector, Joseph Showers, to inspect the concrete work before they would authorize the concrete draw payment. Mr. Showers issued a report, which included photographs of the completed work, and signed Apex's invoice, thereby showing the work was complete. Apex sent an email to the O'Kelleys on February 22, 2014, showing that all concrete elements were completed and approved per Showers's inspection. The concrete draw money still was not paid.

25. Though Apex was not being paid, it continued work on the custom home to meet the O'Kelleys' new demands following their January, 2013 on-site visit. Apex worked with the O'Kelleys' newly hired designer, who proposed a number of changes to the interior design of the main structure. Apex was prepared to make these changes to accommodate the O'Kelleys, but it would come with additional costs. The O'Kelley's however were not prepared to bear those costs and refused to sign the change order or compensate Apex for the work already completed.

26. The O'Kelleys have demanded that Apex cease any further work on the custom home and have failed to make any payments other than what has been described herein.

27. For all of the reasons stated in paragraphs 1-26, inclusive, the O'Kelleys breached their contract with Apex by failing to pay for services rendered in conformity

with the agreement set forth in the contract and as later modified by the O'Kelleys' agreement. For these reasons, the O'Kelleys owe Apex damages as set forth in the Prayer for Relief as to Count I.

### COUNT II – UNJUST ENRICHMENT

28. Paragraphs 1-27 are re-alleged, reaffirmed, and incorporated herein by reference.

29. In the alternative, Apex requests relief under the common law theory of unjust enrichment. In Virginia, Apex establishes a claim for unjust enrichment if it shows the following: 1) Apex conferred a benefit on the O'Kelleys; 2) the O'Kelleys knew of the benefit and should reasonably have expected to repay Apex; and, 3) the O'Kelleys accepted or retained the benefit without paying for its value. *See Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 116 (2008).

30. To date, the O'Kelleys have a custom home on their lot designed to the specifications they approved. The existing structure is fully framed and under roof, has the concrete foundation in place, has a completed elevator shaft, and has a fully built up basement, main level, and second level. The as-is structure has a value, separate and apart from the lot's land value, of approximately $500,000.00 as it stands.

31. To date, Apex has paid $312,133.58 for materials, permits, and other related costs for construction of the custom home. The O'Kelleys maintain access to, and possession of, these materials and the structure. The O'Kelleys have only paid $184,329.00 for a structure worth $500,000.00 and for hundreds of hours of work performed by Apex.

32. There is no question the O'Kelleys anticipated paying for these services. They entered into a contract with Apex under the expectation that they would pay approximately $1.5 million in exchange for the custom home they designed. They have not paid anywhere near the value of the property and labor, but continue to retain benefits from Apex's work.

33. By allowing the O'Kelleys to retain the as-is structure and lot without paying for any of the work performed by Apex, or for the value of the building itself, the O'Kelleys have been unjustly enriched. And as such, they should be required to pay damages in the amount specified below in the Prayer for Relief.

## JURY TRIAL DEMAND

34. Paragraphs 1-33 are re-alleged, reaffirmed, and incorporated herein by reference.

35. Trial by jury on all counts is demanded in this matter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Apex Custom Homes, L.L.C., by counsel, does hereby move this Court for entry of Judgment against the Defendants, Ronald L. O'Kelley and Lesley S. O'Kelley, as jointly and severally liable, and relief in the amounts set forth below:

COUNT I – Breach of Contract

1. The Plaintiff requests a judgment in the sum of $1,077,089.58,

2. Interest at 6% per annum incurred from the date of breach,

3. Litigation costs,

4. Attorney's fees to the extent provided by law, and

5. Such other and further relief as the Court deems appropriate.

COUNT II – Unjust Enrichment

1. The Plaintiff requests a judgment in the sum of $500,000.00.

2. Interest at 6% per annum incurred from the date of nonpayment,

3. Litigation costs,

4. Attorney's fees to the extent provided by law, and

5. Such other and further relief as the Court deems appropriate.

      Respectfully Submitted,
      Apex Custom Homes, L.L.C.,
      By Counsel

COUNSEL FOR THE PLAINTIFF, APEX CUSTOM HOMES, L.L.C.:

BY: _____
Peter D. Greenspun
Virginia Bar #18052
pdg@greenspunlaw.com
Mikhail N. Lopez
Virginia Bar #83255
mnl@greenspunlaw.com
GREENSPUN SHAPIRO PC
3955 Chain Bridge Road
Second Floor
Fairfax, Virginia 22030
(703) 352-0100
(703) 591-7268 (fax)